UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11094-RGS

CLAYTON SCHWANN, THOMAS LEDUC, RAMON HELEODORO, JAMES DUGGAN, ERIC VITALE, PHINNIAS MUCHIRAHONDO, TEMISTOCLES SANTOS, LAWRENCE ADAMS, JEFF BAYLIES, AND ROBERT SANGSTER

v.

FEDEX GROUND PACKAGE SYSTEM, INC.

MEMORANDUM AND ORDER ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

July 3, 2013

STEARNS, D.J.

The plaintiffs in this case are former pick-up and delivery drivers for FedEx Ground Package System, Inc. (FedEx) in Massachusetts. The drivers allege that FedEx violated Massachusetts law by improperly classifying them as independent contractors when they in fact worked as direct employees of FedEx. Before the court are the parties' cross-motions for summary judgment. Plaintiffs move for summary judgment solely on a misclassification claim under Mass. Gen. Laws ch. 149, § 148B (the Independent Contractor Statute) (Count I). FedEx responds with its own motion for summary judgment on all three of plaintiffs' claims, including improper deduction of benefits and withholding of wages under Mass. Gen. Laws ch. 149, §§ 148, 150 (the

Wage Laws) (Count II), and unjust enrichment (Count III). A hearing on the motions was held on June 25, 2013.

## BACKGROUND

The facts relevant to the present motions for summary judgment are unchanged since the court's order denying class certification. *See Schwann v. FedEx Ground Package Sys.*, 2013 WL 1292432 (D. Mass. Apr. 1, 2013).

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *Id.* A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the

judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995).

## DISCUSSION

The crux of plaintiffs' Complaint is that FedEx improperly classified them as independent contractors when they were in fact employees of FedEx. Under Massachusetts law, a worker is deemed an employee unless the putative employer can show that:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
>
> (2) the service is performed outside the usual course of the business of the employer; and,
>
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149, § 148B. "The employer bears the burden of proof, and, because the conditions are conjunctive, its failure to demonstrate any one of the criteria set forth in subsections [(1), (2), or (3)], suffices to establish that the services in question constitute 'employment' within the meaning of [§148B]." *Athol Daily News v. Bd. of Div. of Emp't and Training*, 439 Mass. 171, 175 (2003).

Plaintiffs move for summary judgment on the misclassification claim with respect

3

to prongs two and three of the independent contractor test. They argue that FedEx cannot bear its burden of proving either that the package delivery and pick-up services they performed were outside the company's usual course of business, or that they performed similar services for independent third parties. FedEx moves for summary judgment on all of plaintiffs' claims on the ground that the Massachusetts Independent Contractor Statute, as applied to the motor carrier industry, is preempted by the Federal Aviation Administration Authorization Act of 1994 (FAAAA), 49 U.S.C. § 14501.[1] FedEx also moves for summary judgment on Count III on the additional ground that the contractual Operating Agreements prevent plaintiffs from seeking equitable relief under a theory of unjust enrichment. Because FedEx's preemption claim, if sound, would render an analysis under section 148B superfluous, I turn to it first.

**FAAAA Preemption**

In 1978, Congress enacted the Airline Deregulation Act (ADA), now codified at 49 U.S.C. § 41713, to supplant extensive federal economic regulation of the airline industry with a policy of "maximum reliance on competitive market forces." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). "To ensure that the States

---

[1] FedEx has refined the scope of its preemption argument in its reply brief and at oral argument and now contends that the FAAAA preempts only the "usual course of business" prong of the Independent Contractor test. This distinction is important, but ultimately has no bearing on the outcome of the present motions.

would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision, prohibiting the States from any law 'relating to rates, routes, or services' of any air carrier." *Id.* Two years later, Congress deregulated the trucking industry through the Motor Carrier Act of 1980. The Motor Carrier Act did not include an express preemption provision. However, in 1994 Congress preempted state regulation of the interstate trucking regulation in the FAAAA. *See Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008). The FAAAA's preemption provision provides that "a State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).[2]

FedEx contends that the Independent Contractor Statue imposes a "significant impact" on FedEx's rates, routes, and services, and harbinges the creation of a "patchwork" of inconsistent state independent contractor laws with which national carriers would be forced to comply contrary to Congress's intent. According to FedEx, "*any* application of state law that would force a carrier to change the manner in which it provides services . . . is preempted by the FAAAA and ADA." Def.'s Mot. Summ.

---

[2] Because the language of the FAAAA's preemption provision was borrowed from the Airline Deregulation Act, cases interpreting the ADA inform the scope of the FAAAA. *See id.* at 370.

J. at 9-10 (emphasis added). Thus, the argument continues, because enforcement of the "usual course of business prong" would prevent FedEx from carrying out its "economic and competition-driven decision" to use independent contractors for package pick-up and delivery, the second prong of the independent contractor test must be preempted by the FAAAA.

It is true that to fall within FAAAA preemption, a state law need not directly regulate a motor carrier's activities. "The phrase 'related to,' . . . embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1778 (2013), quoting *Rowe*, 552 U.S. at 370. However, the statute "does not preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" *Id.*, quoting *Rowe*, 552 U.S. at 371. General laws that affect truck drivers "only in their capacity as members of the public" do not trigger preemption. *See Rowe*, 552 U.S. at 375. Moreover, the Supreme Court specifically held in *Dan's City* that Congress's addition of the phrase "'with respect to the transportation of property' . . . massively limits the scope of preemption ordered by the FAAAA." *Dan's City*, 133 S. Ct. at 1778. "[F]or purposes of FAAAA preemption, it is not sufficient that a state law relates to the 'price, route, or service' of a motor

6

carrier in any capacity; *the law must also concern a motor carrier's 'transportation of property.'*" *Id.* at 1778-1779 (emphasis added).

Applying the holding in *Dan's City*, the court finds that the FAAAA does not preempt plaintiffs' claims. The Independent Contractor Statute on which FedEx relies for its preemption argument serves largely a definitional purpose, identifying the class of workers protected by the Wage Laws. The Wage Laws, in turn, apply broadly to all employees of businesses located in the Commonwealth. The statute has nothing to do with the regulation of the "carriage of property." *Id.* at 1775. It simply explains to businesses like FedEx who operate in the Commonwealth when a worker must be paid as an employee. It has nothing to say on the subject of how a specific job is performed, in this case, how FedEx drivers go about delivering packages to FedEx customers.

In rejecting a virtually identical preemption claim, Judge Woodlock wrote that to find the "FAAAA preempts wage laws because they may have an indirect impact on [a motor carrier]'s pricing decisions amounts to an invitation to immunize it from all state economic regulation." *Martins v. 3PD, Inc.*, 2013 WL 1320454, at *12 (D. Mass. Mar. 28, 2013). "[T]he First Circuit specifically rejected the position . . . that state regulation is preempted simply because it affects the market forces at work in its

7

pricing decisions." *Id.*, citing *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 89 (1st Cir. 2011) ("We do not endorse American [Airlines]'s view that state regulation is preempted wherever it imposes costs on airlines and therefore affects fares because costs must be made up elsewhere . . . . This would effectively exempt airlines from state taxes, state lawsuits of many kinds, and perhaps most other state regulation of any consequence." (internal quotations omitted)).

Even if the Independent Contractor Statute prevents FedEx from implementing its preferred business model of classifying its delivery drivers as independent contractors (there is no reason to believe that it does not), this does not create a sufficient relationship to its prices, routes, or services to trigger preemption. Almost by definition, state employment laws (which almost always place constraints on an employer's freedom of contract) will impact the operating costs of a business subject to its regulation. But the indirect economic impact of a state law of general applicability is precisely the attenuated cause-and-effect that the First Circuit held in *DiFiore* would not trigger preemption. *See also S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc*, 697 F.3d 544, 558 (7th Cir. 2012) ("[L]abor inputs are affected by a network of labor laws, including minimum wage laws . . . . Changes to these background laws will ultimately affect the costs of these inputs, and thus, in turn, the

8

price . . . or service of the outputs. Yet no one thinks the . . . FAAAA preempts these and the many comparable state laws . . . because their effect on price is too 'remote.'").[3]  Although FedEx's "significant impact" argument may have seemed plausible prior to the Supreme Court's decision in *Dan's City*, it cannot seriously be contended that the Independent Contractor Statute "concern[s] a motor carrier's transportation of property."[4]  Thus, FedEx's motion for summary judgment on the ground of preemption will be denied.

---

[3] FedEx attempts to distance itself from this line of cases by arguing that the Independent Contractor Statute's "usual course of business" prong is not preempted solely because of its affect on price, but also because it "effectively prohibits" motor carriers from using independent contractors.  But this is a distinction without a difference.  The reason FedEx resists classification of its drivers as employees is precisely because of the impact such classification will have on its operating costs.  FedEx is not prohibited from offering services that it wishes to, nor forced to offer those that it does not.  The employment status of FedEx's drivers matters only insofar as it requires FedEx to comply with the provisions of the Wage Act.

[4] FedEx's preemption argument relies heavily on *Sanchez v. Lasership, Inc.*, 2013 WL 1395733 (E.D. Va. Apr. 4, 2013).  In *Sanchez*, a Virginia district court applying Massachusetts law held that the FAAAA preempted the Independent Contractor Statute.  The court found that the "logical effect" of the "unprecedented, restrictive independent contractor test" "is a categorical ban on the use of independent contractors by motor carriers in Massachusetts," and thus has a significant impact on motor carriers' prices, routes, and services.  *Id.*, at *10, 11.  As an initial matter, the court disagrees with the holding in *Sanchez* as it conflicts with the First Circuit's reasoning in *DiFiore* and Judge Woodlock's decision in *Martins*.  Moreover, *Sanchez* was decided before the Supreme Court's holding in *Dan's City* that a state law is preempted only if it implicates a motor carrier's transportation of property.

**Drivers' Classification under the Independent Contractor Statute**

Plaintiffs seek summary judgment that FedEx is unable to satisfy prongs two and three of the Independent Contractor Statute. Because an employer's failure to satisfy all three parts of the test necessitates an "employee" classification, summary judgment on Count I will be granted if FedEx fails to make an adequate showing as to either prong.

In order to prove that plaintiffs were independent contractors, FedEx must show, *inter alia*, that the package pick-up and delivery services that its drivers performed were outside the company's usual course of business. Mass. Gen. Laws ch. 149, § 148B(a)(2). Plaintiffs assert that package pick-up and delivery is the whole point of FedEx's business and thus no genuine issue of material fact exists as to the second prong of the statutory test. FedEx responds that rather than being in the package-delivery business, its real business is logistics, more specifically, the operating of "a sophisticated information and distribution network *for* the pickup and delivery of small packages." Def.'s Opp.'n to Summ. J. at 6 (emphasis added).[5]

The Massachusetts Supreme Judicial Court has determined that a service falls

---

[5] The distinction is a creative one and requires serious analysis, although at first glance, as the court observed at the hearing, it is akin to the U.S. Army arguing that its business is weapons development and logistical planning, while it leaves the delivery of warfare to soldiers functioning as independent contractors.

within an employer's usual course of business if the putative employer defines its business as including the service. *See Athol Daily News*, 439 Mass. at 179 (2003) (newspaper delivery carriers performed delivery services in the usual course of a newspaper's business where newspaper defined its business as "publishing and distributing a daily newspaper."). The Massachusetts Attorney General has also posited a "usual course of business" test that attempts to draw the more difficult distinction between a service "necessary to the business" and one "merely incidental" to it. *An Advisory from the Atty. Gen.'s Fair Labor Div. on M.G.L. c. 149, s. 148B* (2008), at 5 (*Advisory Op.*).[6] According to the Attorney General, in determining whether a service is necessary to a business, "the bottom line is: if the defendant were to have employees, whether those employees would perform the same services as those whom the Agreement terms as independent contractors."[7] *Martins*, 2013 WL 1320454,

---

[6] The Massachusetts Attorney General's interpretation of the Independent Contractor Statute is entitled to "substantial deference." *See Smith v. Winter Place LLC*, 447 Mass. 363, 367-368 (2006) ("Insofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference . . . ."). FedEx's argument that the Attorney General's statement of the law should be afforded less weight because it is found in the "Enforcement Guidelines" section of the Advisory Opinion is unpersuasive for the simple reason that interpretation is a prerequisite to enforcement.

[7] The Massachusetts Attorney General's Office has already found that FedEx misclassified its delivery drivers as independent contractors in violation of the

11

at *13, quoting *Rainbow Dev., LLC v. Dept. of Indus. Accidents*, 2005 WL 3543770, at *3 (Mass. Super. Ct. Nov. 17, 2005) (alterations and internal quotations removed); *see also Am. Zurich Ins. Co. v. Dep't of Indus. Accidents*, 2006 WL 2205085, at *4 (Mass. Super. Ct. June 1, 2006) ("[A] worker whose services form a regular and continuing part of the employer's business . . . should be found to be an employee and not an independent contractor.").[8] In other words, the pick-up and delivery services performed by the drivers fall within FedEx's usual course of business if, "without the services of the [drivers], [FedEx] would cease to operate." *Rainbow Dev.*, 2005 WL 3543770, at *3.[9]

---

Independent Contractor Statute. *See* Atty. Gen.'s Office Citations of FedEx for Violation of Mass. Gen. Laws ch. 149, § 148B; *FedEx Ground Package Sys., Inc. v. Office of the Atty. Gen.*, Docket No. LB-08-1 - LB-08-13 (Division of Administrative Law Appeals) (Attorney General's Motion for Partial Summary Judgment, Feb. 23, 2009).

[8] The *Advisory Opinion* provides examples of how the Attorney General will apply the "usual course of business" test. An individual working as an appraiser for a business that provides motor vehicle appraisals is an employee "because the appraiser is performing an essential part of the appraisal company's business." *Advisory Op.* at 6. On the other hand, an individual hired by an accounting firm to move office furniture may be an independent contractor "because the moving of furniture is incidental" to the accounting firm's business. *Id.*

[9] FedEx contends that the Attorney General's interpretation of the "usual course of business" test as encompassing any worker that is "necessary" to the business effectively forecloses the use of independent contractors to carry out tasks in the Commonwealth. The court recognizes the logic in this position, as exemplified by the

FedEx holds itself out to the public as providing package pick-up and delivery services. The "About FedEx" page of the company's website states that "FedEx Ground specializes in cost-effective, small-package shipping, offering dependable business-to-business delivery or convenient residential service . . . ." FedEx has also advertised its services as "economical ground delivery to businesses" in promotional brochures. Moreover, in an Annual Report filed with the Commonwealth, FedEx described its business as "small package pickup and delivery." FedEx's attempt to minimize its own characterizations of its services is unpersuasive. Whether intended as shorthand for a more metaphysical purveyor of logistics business entity or not, FedEx advertises that it offers package pick-up and delivery services and its customers have no reason to believe otherwise.[10]

---

difficulty plaintiffs' counsel encountered in conjuring a hypothetical where a worker providing regular services to a business could ever be classified as an independent contractor. While it is not the court's prerogative to second-guess or a place a gloss on the authoritative interpretation of the Attorney General, the court readily assumes that she would not use her enforcement powers under the Independent Contractor Statute in derogation of a person's right to legitimately conduct business as a sole proprietorship or a sub-S corporation even if he or she primarily provides necessary services to a corporation like FedEx.

[10] FedEx moves to strike pages from its own website introduced in plaintiffs' reply brief in support of summary judgment. The publicly available materials were not introduced in an attempt to "sandbag" FedEx, but were properly offered by plaintiffs to rebut FedEx's argument that its description of its services in corporate filings was merely "casual and shorthand." The motion to strike is DENIED.

13

It is also beyond cavil that the pick-up and delivery drivers are essential to FedEx's business. The core of FedEx's argument is that although it operates a "sophisticated information and distribution network," it does not itself provide any delivery services. To support this claim, FedEx states that out of the 43,000 persons it deems to be employees, none pick-up or deliver packages. But this argument is premised on a tautology. FedEx cannot assert that it does not provide delivery services by simply refusing to recognize its delivery drivers as employees. *See Martins*, 2013 WL 1320454, at *15 ("3PD cannot persuasively argue that it did not provide delivery services because those services were provided by third parties when the question at issue is whether those third parties were employees of 3PD."). Without the drivers, there would be no one to pick up or deliver packages and FedEx's "distribution network," while it would likely attract a buyer, would be of so diminished a value that the prospect of shareholder approval of the sale would be next to zero.

FedEx's argument is not new and has failed in other courts. In *Oliveira v. Advanced Delivery Sys.*, 2010 WL 4071360 (Mass. Super. Ct. July 16, 2010), a home furniture delivery company argued that it did not provide delivery services because it only managed the delivery of the retailers' furniture to customers, while the drivers carried out the actual deliveries. In concluding that the delivery services were within

the employer's usual course of business, the court found that "the managing and performing functions of furniture delivery result in a symbiotic relationship. Without providing physical delivery of furniture, which is essential to its business, ADS' business would not exist." *Id.*, at *6. In *Martins*, Judge Woodlock adopted the reasoning of *Oliveira* and found that delivery services performed by drivers for a retail merchandise delivery and logistics company were within the usual course of the company's business, despite the company's claim that it is merely in the "property brokering and freight forwarding business." *See Martins*, 2013 WL 1320454, at *15 ("Plaintiffs and 3PD exhibit this same symbiotic relationship. Without the delivery service, 3PD would not exist."); *see also Fucci v. E. Connection Operating, Inc.*, C.A. No. 2008-2659, at *9 (Mass. Super. Ct. Sept. 21, 2009) (although defendant claimed that it was only a "marketing logistics corporation which outsources transportation needs for customers," delivery services performed by drivers were within the company's usual course of business because defendant "arranged for the pickup and delivery of its customers' packages, [and] also compensated the [drivers] to perform these non-logistical services and billed its customers for the same.").

Here, the plaintiff drivers "are engaged in the exact business" FedEx is in; FedEx "merely provides the administration." *Rainbow Dev.*, 2005 WL 3543770, at *3.

Without the drivers' delivery services to put FedEx's information and distribution network to use, FedEx would "cease to operate," *id.*, at least as the type of entity the public has come to believe it to be (and which image FedEx has cultivated through its advertising and public filings). Courts outside of this jurisdiction have also concluded that package pick-up and delivery drivers are necessary to FedEx's business. *See Estrada v. FedEx Ground Package Sys., Inc.*, No. BC210130, at *16 (Cal. Super. Ct. 2004) ("Most important of all, the court finds that the work of the [drivers] is essential to [FedEx's] core business operation, the pick up and delivery of packages. If 'lightening' were to strike so that there would be no [FedEx], there would in fact be nothing left for the [drivers] to do and they suddenly would be totally bereft of business" because FedEx provides the terminals, customers, and logistical support that is the "crux of their daily work."); *Fluegel v. FedEx Ground Package Sys.*, Civil No. 3:05-MD-527 RM, at *9 (N.D. Ind. May 28, 2010) ("The services performed by the [drivers] were necessary to FedEx's business of picking up and delivering packages . . . . It is undisputed that the [drivers'] work was performed within the usual course of FedEx's business.").

FedEx fails to raise a genuine issue of material fact as to whether plaintiffs' pick-up and delivery services were performed outside of FedEx's usual course of business.

Because FedEx must satisfy all three prongs of the Independent Contractor Statute to rebut the presumption of employment status, the court need not reach plaintiffs' claim under the third prong. Plaintiffs were employees of FedEx under Massachusetts law. Their motion for summary judgment on Count I will therefore be granted.

**Unjust Enrichment**

"An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). Here, plaintiffs' claims are premised entirely on misclassification under the Wage Act. They have made no showing that the remedy provided for under the Act would be inadequate. *See Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 585 (1994) (where a comprehensive remedial statute provides a plaintiff adequate relief, a replication of claims in the form of novel common-law or equitable actions is precluded). Because damages under a theory of unjust enrichment would, at best, merely duplicate an award under the Wage Act, Count III will be dismissed.

**Exhaustion of Administrative Remedies**

In its final effort to stave off summary judgment, FedEx argues that a number of the plaintiffs have failed to exhaust their administrative remedies as required by Mass. Gen. Laws ch. 149, § 150. That section provides, in relevant part, that an individual

alleging a violation of the Independent Contractor Statute (among other violations) may bring a private civil suit "in his own name and on his own behalf, or for himself and for others similarly situated" ninety days after filing a complaint with the Attorney General. *Id.* FedEx maintains that this exhaustion requirement must be strictly construed: "Not even the Attorney General herself could interpret § 150 in a way that eliminates the exhaustion requirement . . . ." Def.'s Opp. to Summ. J. at 19. Thus, FedEx asserts that because some of the plaintiffs never received a personal right-to-sue letter from the Attorney General's Office and did not wait the requisite ninety days before filing this suit, they cannot prevail on their Wage Act claims.

The Massachusetts Supreme Judicial Court recently held that a plaintiff's failure to exhaust section 150's administrative remedies does not deprive a court of jurisdiction to hear a misclassification claim under section 148B. *Depianti v. Jan-Pro Franchising Int'l. Inc.*, 465 Mass. 607, at *2 (2013). The Court explained that "[t]he requirement that a plaintiff file a complaint with the Attorney General before bringing a private suit is intended simply to ensure that the Attorney General receives notice of the alleged violations, so that she may investigate and prosecute such violations at her discretion." *Id.*, at *3. The Court contrasted section 150 with the Massachusetts antidiscrimination statute (Mass. Gen. Laws ch. 151B), which contains a similarly-

worded procedural requirement. A filing of a complaint under the antidiscrimination statute "triggers mandatory prompt investigation" by the Massachusetts Commission Against Discrimination, in essence granting the agency "exclusive jurisdiction over claims of discrimination for ninety days, so that it may attempt to resolve such claims with greater flexibility and efficiency than may be had in a judicial forum." *Id.*, at *4.

> Section 150 stands in stark contrast to the antidiscrimination statute. It does not provide a comprehensive remedial scheme to resolve claims outside a judicial forum. Rather, § 150 authorizes two types of actions that may come before a court, one brought by the Attorney General, the other by individual plaintiffs. Further, unlike the filing requirement in the antidiscrimination statute, the filing requirement in § 150 triggers no mandatory agency investigation or administrative adjudicatory action. While the filing requirement in the antidiscrimination statute operates as the necessary first step in a comprehensive remedial scheme, the filing requirement in § 150 operates merely to ensure that the Attorney General receives notice of potential employment violations.

*Id.*

To the extent that section 150 serves a notice function, plaintiffs have clearly satisfied the statutory requisite. The Attorney General had already issued thirteen citations against FedEx for misclassification of its drivers before plaintiffs commenced this suit.[11] Furthermore, plaintiff Leduc received a right-to-sue letter from the Attorney

---

[11] FedEx contends that plaintiff Schwann's statutory claims should be barred for the additional reason that he never filed a complaint with the Attorney General's Office. Because the Attorney General had already issued a citation for Schwann, the Office was clearly aware of his Wage Act complaint.

19

General authorizing him to bring an action on behalf of others "similarly situated."[12] FedEx's contention that each plaintiff was required to individually satisfy the administrative requirements despite having already received permission to sue is meritless. Plaintiffs have satisfied the administrative notice requirement of Section 150.

## ORDER

For the foregoing reasons, plaintiffs' motion for summary judgment on Count I is <u>ALLOWED</u>. FedEx's motion for summary judgment on Counts I and II is <u>DENIED</u>. FedEx's motion for summary judgment on Count III is <u>ALLOWED</u>. The parties will within 21 days submit an agreed-to statement of actual damages owing to plaintiffs in light of the court's ruling. If the parties cannot agree, the court will schedule an assessment of damages hearing.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[12] The plain intent of this authorization is confirmed in a letter submitted by plaintiffs from Assistant Attorney General Bruce Trager confirming the right of plaintiffs' counsel to file suit on behalf of others raising the same claims against FedEx. *See* Aff. of Bruce Trager.