**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

CLAYTON SCHWANN, <u>et</u> <u>al.</u>,

               Plaintiffs,

  v.

FEDEX GROUND PACKAGE SYSTEM,
INC.,

               Defendant.

Civ. A. No. 1:11-cv-11094-RGS

---

## PLAINTIFFS' BRIEF REGARDING CATEGORIES OF RECOVERABLE DAMAGES

### I.  INTRODUCTION

The Plaintiffs in this case have worked as pick-up and delivery drivers for FedEx Ground Package System, Inc. ("FedEx") in Massachusetts.  On July 3, 2013, this Court granted the Plaintiffs' Renewed Motion for Summary Judgment on Liability (Count I), holding that FedEx misclassified the plaintiffs as independent contractors in violation of the Massachusetts Independent Contractor law, M.G.L. c. 149, § 148B. [Doc. 102]. Pursuant to the Court's order of July 25, 2013 [Doc. 104], Plaintiffs now file this brief describing the categories of damages they are entitled to recover under the Massachusetts Wage Act, M.G.L. c. 149, §§ 148 and 150.

### II.  SUMMARY OF RELEVANT FACTS

Under the agreement that FedEx required each delivery driver to sign (<u>see</u> "Operating Agreement", Doc. 69-13), FedEx required the plaintiffs to pay many of FedEx's own costs of operating its delivery business.  Many expenses were deducted by FedEx directly from the plaintiffs' weekly wages, including work accident insurance,

1

cargo liability insurance, insurance deductible payments, see id. at § 3.5 (The Plaintiffs

are responsible under the agreement for "[t]he first $1,000 arising from each claim

brought against FedEx Ground and all liabilities incurred by FedEx Ground…incidental

or growing out of any act or omission of Contractor…", and Plaintiffs are liable for the

full cost of "[a]ny and all claims brought against FedEx Ground…on account of

Contractor's failure…to comply with any laws, rules, regulations or orders…."), and the

cost of a "business support package" FedEx required the drivers to pay for.  This

"business support package" provided the drivers with the mandatory FedEx uniforms,

package scanners, and regular vehicle washings. See id. at § 1.3 ("To facilitate

payment of licenses, taxes and fees…Contractor hereby authorizes FedEx Ground to

pay these charges on Contractor's behalf and to charge Contractor for any such

payments…[plus] any direct expenses incurred…in connection with their payment.");

see "Weekly Contract Settlement Statement, 2/26/2010" for Plaintiff Baylies (Bates No.

Bay000218), attached hereto as Exhibit 1 (indicating a number of weekly deductions

FedEx made from the Plaintiffs' wages including for the business support package

("BSP"), work accident insurance, and physical damage insurance).

In addition, FedEx also deducted $1,000 from the plaintiffs' pay over the course

of their relationship with FedEx in order to fund what FedEx called an "escrow" account

"held by FedEx Ground," from which FedEx could make any deduction that was, in

FedEx's sole discretion, authorized under the agreement. Id. at § 1.9.  Upon

termination, FedEx was authorized to make any deductions necessary to cover any

debt that FedEx, in its sole discretion, decided was owed by the Plaintiffs under the

agreement, and FedEx did not have to return the remainder of the account, if any, to the Plaintiffs until forty-five days after termination. Id.

FedEx also required the plaintiffs to pay to third parties many of FedEx's expenses that were necessary for them to perform their work for FedEx.  These expenses include purchasing or leasing the delivery trucks, purchasing fuel, purchasing and replacing tires, and maintaining the vehicles.  See, e.g., id. at § 1.3 ("Contractor agrees to bear all costs and expenses incidental to operation of the [delivery vehicles]…including…all maintenance…, fuel, oil, repairs,…[and] insurance coverage….").[1]

For the drivers, these costs—whether deducted directly from their wages by FedEx, or paid out of their own pockets on FedEx's behalf—consumed a significant portion of their earnings (especially considering the fact that, on average, the drivers worked around 70 hours each week). See [Doc. 69-3 through 69-12].  For example:

♦   After working between 70 and 80 hours each week, [Doc. 69-5] at ¶ 15, Plaintiff Heleodoro earned $84,811 in 2009, but $41,774 of that amount— nearly half of his earnings—went to expenses such as paying for his

---

[1]     Plaintiffs expect that FedEx may likely argue that it paid extra to the plaintiffs in recognition of the fact that they would need to pay for fuel. See Exhibit 1 (referring to "Fuel/Mileage Settlement"), but in fact that payment was a flat rate that was not tied to the plaintiffs' actual fuel costs.  In fact, drivers who purchased fuel directly from FedEx were not entitled to any fuel/mileage settlement. See [Doc. 69-13] at Addendum 3, Section I(O).  At any rate, the operating agreement shifted the entire cost of fuel to the Plaintiffs. Id. at § 1.3.  And, as discussed below, under Somers v. Converged Access, Inc., 454 Mass. 582, 591-93 (2009), the Massachusetts Supreme Judicial Court has rejected the defense that an employer paid a worker a higher amount as an independent contractor (to reflect the fact that the worker would bear expenses) and would have paid the worker less had it realized that the worker should have been classified as an employee.

vehicle, fuel, insurance, and the business support package; Pl.

Heleodoro's Form 1040, Schedule C for 2009 (attached here as Exhibit 2);

♦   After working between 50 and 60 hours each week, [Doc. 69-12] at ¶ 15,

Plaintiff Sangster earned $78,964 in 2009, but he had to pay $53,341 in

expenses, reducing his pay to $25,625[2]; Pl. Sangster's Form 1040,

Schedule C for 2009 (attached here as Exhibit 3).

The business support package alone reduced the drivers' wages by between $1,500

and $2,700 each year. See Exhibits 2 and 3.  All of these costs were required by the

operating agreement the drivers were required to sign as a prerequisite to being

employed by FedEx.

## III. ARGUMENT

This Court has already held that FedEx violated Massachusetts law by

misclassifying the plaintiffs as independent contractors. [Doc. 102].  The issue

remaining in this case is what damages are available to the drivers on account of having

been misclassified as independent contractors in violation of Massachusetts law.

The wage law violation is particularly egregious here: not only did FedEx deduct

money from the plaintiffs' wages to pay for workers compensation insurance, liability

insurance, and other expenses that should have be borne by FedEx, but it also required

the plaintiffs to pay significant sums of money out of their own pockets each week that

were for the benefit of FedEx, as a condition of continued employment with FedEx.

These expenses include truck payments, maintenance costs, and fuel.  In short,

---

[2]     These amounts--$41,774 for Heleodoro and $25,625 for Sangster--are gross pay
figures, prior to the drivers' payment of taxes on their earnings.

FedEx's entire business model has been based on passing on a large portion of the ordinary expenses of operating a small-package delivery company to the delivery drivers.

FedEx created this system under the guise of an independent contractor relationship.  However, as this Court has held, FedEx's relationship with the Plaintiffs is in fact an employer-employee relationship. [Doc. 102].  FedEx is therefore liable for all damages incurred as a result of this misclassification as provided under M.G.L. c. 149, § 150, which provides that Plaintiffs are entitled to "any damages incurred, and for any lost wages and other benefits," including treble damages,[3] attorneys' fees and costs, and pre- and post-judgment interest.

### A. Plaintiffs Are Entitled to Recover All Wage Deductions FedEx Made from the Plaintiffs' Weekly Settlement Statements.

The law is unequivocally clear that FedEx is prohibited from making the deductions it has made from the plaintiffs' checks.  "Section 148 of the Wage Act requires prompt and full payment of wages due." Camara v. Attorney General, 458 Mass. 756, 759 (Mass. 2011).  In particular, the "special contract" provision in § 148B "generally prohibit[s] an employer from deducting, or withholding payment of, any earned wages." Camara, 458 Mass. at 760 (holding that such an interpretation is "consistent with the statute's purpose, which is 'to protect employees and their right to wages.'") (quoting Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 70

---

[3]     As of July 12, 2008, § 150 was amended to make the award of treble damages mandatory rather than permissive. See Rosnov v. Molloy, 460 Mass. 474, 478 (2011). Thus, for the vast majority of time at issue in this case (all but for a few weeks), treble damages are mandatory.  For the period prior to July 12, 2008, the trebling of damages is within the Court's discretion, and is appropriately awarded where the employer showed "reckless indifference to the rights of others." Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 710 (2005).

(2009)).[4]  In Awuah v. Coverall, North America, Inc, 460 Mass. at 494-98, the SJC held

that an employer violates the Wage Act when it makes deductions from workers' pay for

expenses that benefit the employer, as well as other expenses that employers are

required to pay, such as workers' compensation insurance.[5]  Here, FedEx made

deductions from the plaintiffs' pay for not only workers' compensation insurance and

cargo liability insurance, but also for the cost of uniforms, package scanners, vehicle

washings, insurance deductible payments when drivers were in accidents, and a so-

called "escrow" account from which FedEx could make additional deductions at will.

These deductions are not permissible under the Wage Act and are all recoverable as

damages in this action.

> **B.  By Shifting its Own Business Expenses onto the Plaintiffs, FedEx
> Required Plaintiffs to Pay in order to Perform Their Jobs and Thus
> Deducted from the Amount that Plaintiffs Would Otherwise Have Earned
> in Wages.**

Just as FedEx cannot make deductions directly from the drivers' wages to pay for

its own business expenses, FedEx likewise cannot have required its drivers to pay for

FedEx's business expenses out of their own pockets.  In Coverall, 460 Mass. at 497-98,

---

[4]      The only exceptions to this broad prohibition against wage deductions do not
apply here. See M.G.L. c. 154, § 8 (listing certain assignments of wages that are
permitted), and Camara, 458 Mass. at 761-62 (strictly limiting the "valid set-off"
exception in § 150 to "clear and established debts," such as for damage caused by
employee recklessness, that has been adjudicated in a court or other process affording
the employee due process). The Supreme Judicial Court in Awuah v. Coverall, North
America, Inc., 460 Mass. 484, 496 (2011), held that the wage assignments in M.G.L. c.
154, § 8, deal exclusively with wage assignments "made in furtherance of [the]
employee's interests."

[5]      As in this case, in Coverall, the "paychecks" that the workers received were not
called "paychecks" by the employer.  In Coverall, they were called "franchise
statements", and they were issued on a monthly basis, listing the gross amount of the
workers' earnings, as well as deductions that Coverall took from their pay.  Here, the
plaintiffs' "paychecks" were called "settlement statements" by FedEx, and list the
drivers' gross earnings, as well as deductions taken from their pay.

as in here, the court had held that the workers—janitors who were labeled independent

contractors and required to pay "franchise fees" upfront and throughout their

employment to the employer to secure the right to work—were misclassified as

independent contractors under § 148B. <u>Awuah v. Coverall North America, Inc.</u>, 707

F.Supp.2d 80, 84 (D.Mass. 2010) (Young, J.)  The district court originally held that the

initial imposition of franchise fees on the workers did not violate the Wage Act because

they were not deducted directly from their pay. <u>Awuah v. Coverall North America, Inc.</u>,

740 F.Supp.2d 240, 243 (D.Mass. 2010) (Young, J.).  However, when the case reached

the SJC on certified questions, the SJC rejected the district court's conclusion

concerning the franchise fees, and held instead that these fees were recoverable, even

though they were not deducted from the workers' paychecks (but were instead paid out

of the workers' pockets).  The SJC explained:

> Our view is that fees such as these constitute 'special contracts,' not usual
> between employers and employees.  In substance, they operate to require
> employees to buy their jobs from employers, and in that respect we think they
> violate public policy.

<u>Coverall</u>, 460 Mass. at 498.  In support of its holding, the SJC cited a federal Fair Labor

Standards Act regulation, 29 C.F.R. § 531.35, which provides that "wage

requirements…will not be met where the employee 'kicks-back' directly or indirectly to

the employer or to another person for the employer's benefit the whole or part of the

wage delivered to the employee."  <u>Id.</u>  Notably, this regulation has been cited by courts

holding that "there is no legal difference between deducting a cost directly from the

worker's wages and shifting a cost, which they could not deduct, for the employee to

bear." <u>Arriaga v. Florida Pacific Farms, LLC</u>, 305 F.3d 1228, 1236 (11th Cir. 2002).

Following this same logic, the SJC also held in <u>Coverall</u> that "[a]n employer's insurance

costs, when borne by an employee, reduce wages just as effectively as if the employer
had obtained the policy and deducted funds from the wages." 460 Mass. at 497 n.22.

Here, FedEx imposed many costs directly on the drivers, requiring the drivers to
pay them out of their own pocket, rather than FedEx paying the expenses and then
deducting them from the Plaintiffs' wages.[6]  Like the franchise fees and insurance costs
in Coverall, there is no practical difference between the expenses that FedEx deducted
from the plaintiffs' wages and the expenses FedEx required the plaintiffs to pay out of
their own pockets.  Both methods "reduce[d] wages just as effectively," Coverall, 460
Mass. at 497 n. 22, because the funds for paying for both were effectively drawn out of
the workers' wages.[7]  Therefore, by the same logic as the SJC used to conclude that
the franchise fees that the janitorial workers were required to pay were recoverable
under the Wage Act, the drivers here are likewise entitled to recover all expenses they
were required to pay for FedEx's benefit, in order to perform their jobs for FedEx.[8]

---

[6]     Likewise, in Amero v. Townsend Oil, Superior Court Civil Action No. 07-1080 at
p. 6 (April 15, 2009) (attached hereto as Exhibit 4), the court, after holding the plaintiff
driver to have been misclassified as an independent contractor, noted that the plaintiff
could recover "money spent on expenses like insurance or the cost of his truck, that he
might not have borne otherwise."

[7]     FedEx will likely argue that the Plaintiffs suffered no damages because FedEx
designed its compensation scheme to account for the Plaintiffs' expenses.  However,
besides being factually incorrect, see [Doc. 69-13] at § 1.3 ("Contractor agrees to bear
all costs and expenses…."), the SJC soundly rejected this argument as a matter of law
in Somers v. Converged Access, Inc., 454 Mass. 582, 591-93 (2009).

[8]     Plaintiffs expect that FedEx may argue that they cannot recover expenses that
were paid to third parties, rather than directly to FedEx.  However, as described above,
there is no effective difference between the expenses paid to third parties for FedEx's
benefit and the expenses taken directly out of the plaintiffs' pay by FedEx.  Indeed, the
federal regulation that the SJC cited in Coverall, 29 C.F.R. § 531.35, does not
distinguish between expenses paid directly to the employer, and expenses paid to third
parties for the benefit of the employer.  See also Arriaga, 305 F.3d at 1236-37 (citing 29
C.F.R. § 531.35 to hold employer to have violated FLSA where workers were required

## IV. CONCLUSION

For the reasons stated herein, the Court should hold that the plaintiffs are entitled to recover all deductions taken from the plaintiffs' pay (including all insurance payments, payments for the "business support package", and escrow payments), as well as all expenses that the plaintiffs were required to pay in order to perform their jobs as FedEx drivers (including payments for the purchase or lease of their vehicles, fuel costs, tire replacements, and other vehicle maintenance costs).  Plaintiffs will present evidence regarding these deductions and expenses at the damages assessment hearing scheduled for December.  In addition, Plaintiffs will also be entitled to trebling of their damages, as well as attorneys' fees and costs, and pre- and post-judgment interest.

Respectfully submitted,

CLAYTON SCHWANN, THOMAS LEDUC, MARVIN SANTIAGO, RAMON HELEODORO, JAMES DUGGAN, ERIC VITALE, PHINNIAS MUCHIRAHONDO, TEMISTOCLES SANTOS, LAWRENCE ADAMS, JEFF BAYLIES, and ROBERT

---

to pay expenses to third parties, for the benefit of the employer, as a condition of their employment) (holding that farmworkers who had traveled from Mexico were entitled to recover from their employers for visa costs, visa application fees, immigration fees, and the workers' travel costs).  And although 29 C.F.R. § 531.35 and Arriaga concern minimum wage violations (whereas the plaintiffs here are not complaining of minimum wage violations), that is only because the federal FLSA only protects minimum wages and overtime, and does not have an equivalent to M.G.L. c. 149 § 148, which protects all wages (not just minimum wage and overtime).  In Coverall, the SJC cited 29 C.F.R. § 531.35, even though it was addressing non-minimum wage claims brought under § 148, indicating its intent to adopt that standard (whether an expense borne by the employee is for "the benefit of the employer" or "the benefit of the employee") in determining whether it constitutes a wage violation.

SANGSTER,

By their attorneys,


  /s/ Shannon Liss-Riordan
Harold L. Lichten BBO # 549689
Shannon Liss-Riordan BBO # 640716
Sara Smolik, BBO #661341
Lichten & Liss-Riordan, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800


**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was served upon the attorney of record for each other party via ECF electronic filing on August 1, 2013.


  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.