**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CLAYTON SCHWANN et al,

                Plaintiffs,

  v.

FEDEX GROUND PACKAGE SYSTEM,
INC.,

                Defendant.

Civ. A. No. 1:11-cv-11094-RGS

**PLAINTIFFS' REPLY BRIEF REGARDING**
**CATEGORIES OF RECOVERABLE DAMAGES**

      As set forth below and in Plaintiffs' Brief Regarding Categories of Recoverable

Damages [Doc. 106], FedEx has violated the Wage Act by deducting money from the

Plaintiffs' wages for such expenses as a "business support package," insurance that

mimicked workers' compensation insurance, FedEx uniforms, and other expenses that

should have been borne by FedEx, as well as by requiring its drivers to pay significant

sums of money out of their own pockets each week for expenses that benefited FedEx

(such as payments for fuel and other vehicle expenses).  Since the Wage Act strictly

limits the defenses that are available to FedEx, and FedEx has not established any of

those limited defenses for requiring Plaintiffs to bear these costs, the Court should hold

that Plaintiffs are entitled to recover all of these deductions that FedEx withheld directly

from the Plaintiffs' pay, as well as the business expenses that FedEx required Plaintiffs

to bear, plus statutory trebling of damages, attorneys' fees, costs, and pre- and post-

judgment interest.

I.     **THE WAGE ACT ENTITLES PLAINTIFFS TO RECOVER ALL DEDUCTIONS FEDEX TOOK OUT OF THEIR PAY.**

There can be no question that the Massachusetts Wage Act prohibits FedEx from making deductions from its drivers' pay other than certain deductions not relevant here that are specifically authorized by statute.  See Pls.' Br. at 6, fn. 4.  The plain language of the Wage Act states that "[e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him," and "[n]o person shall *by a special contract* with an employee *or by any other means* exempt himself from this section or from section one hundred and fifty." M.G.L. c. 149, § 148 (emphasis added).[1]  "The Attorney General interprets the 'special contract' language in § 148 as generally prohibiting an employer from deducting, or withholding payment of, *any* earned wages," and the SJC has found this interpretation "to be a reasonable one" that is "consistent with the statute's purpose, which is 'to protect employees and their right to wages.'" Camara v. Attorney General, 458 Mass. 756, 760 (2011) (emphasis in original) (quoting Electronic Data Sys. Corp. v. Attorney General, 454 Mass. 63, 70 (2009) (affording "substantial deference" to the Attorney General's interpretation of the Wage Act)).[2]  And in Awuah v. Coverall North America, Inc., 460 Mass. 484, 494-99 (2011) ("Coverall II"), the SJC applied this interpretation to find an employer violated the

---

[1]     Notably, FedEx admits that it is liable under the Wage Act for the deductions it made from the Plaintiffs' pay for cargo claims and cargo liability insurance premiums. See FedEx's Opp. Br. at 10-11.

[2]     FedEx attempts to defeat this holding with a single unsupported sentence in a decision by Judge Young stating that the employer in Coverall may "set off the cost of the initial supplies and equipment" supplied to its employees.  FedEx's Opp. Br. at 11 (citing Awuah v. Coverall North America, Inc., 2012 WL 910260, *1 (D.Mass. 2012) ("Coverall III")).  However, under Camara, 458 Mass. at 761, any deduction an employer makes from its employees' wages is presumptively invalid "regardless [of] whether the affected employees receive any 'immediate benefit' from [the deduction]."  Judge Young's decision is not entitled to deference because it ignores this important SJC holding and offers no other explanation for its reasoning.

Wage Act when it required its employees to pay franchise fees, workers' compensation-like premiums, and various insurance costs.

FedEx's only possible defense for its deductions from the plaintiffs' pay is provided by M.G.L. c. 149, § 150: "On the trial no defence for failure to pay as required, other than…a valid set-off…shall be valid."  Yet FedEx does not even argue that its deductions to pay for uniforms, package scanners, vehicle washings, and other costs constituted valid setoffs under § 150.[3]  Instead, FedEx seems to argue that it paid the Plaintiffs more than it would have if they had been classified as employees, in order to account for the expenses the drivers were required to pay.  However, this argument has already been specifically rejected by the SJC in Somers v. Converged Access, Inc., 454 Mass. 582, 591-93 (2009):

> Were employers who violated the statute permitted a 'safe harbor' that allowed them to demonstrate that they would have paid the employee less had they known he or she was not an independent contractor, there would be no financial incentive to ensure employer compliance, and employees would be left with no meaningful protection from misclassification.

Thus, under Somers, FedEx cannot justify requiring its drivers to pay expenses based on its claim that it paid them a greater amount than it would have otherwise, in order to account for them having to pay these expenses.  Somers foreclosed that argument.

Indeed, the law is clear that FedEx cannot foist its own business expenses upon its employees and call it a valid setoff: "[t]he Attorney General interprets the valid set-off defense in § 150 as strictly limited in scope," involving "some form of due process through the court system, or occur[ring] at an employee's direction and *in the*

---

[3]       The only possible exception is in a footnote where FedEx obliquely references the valid setoff exception in relation to a so-called "maintenance loan" that FedEx alleges it gave to some of its drivers to repair their vehicles. See FedEx's Opp. Br. at 11, fn. 11.  However, for reasons discussed in this brief, not even these deductions constituted a valid setoff under the Wage Act.

*employee's interests.*" <u>Camara</u>, 458 Mass. at 761-62 (emphasis added).  In <u>Camara</u>, the

SJC found a policy that "shifts to the…employees some of what appear to be the

ordinary costs of doing business" to be a violation of the Wage Act.  458 Mass. at 762 n.

11.[4]

       This is the same conclusion that was reached by the Eleventh Circuit in the case

of <u>Arriaga v. Florida Pacific Farms, LLC</u>, 305 F.3d 1228, 1236 (11th Cir. 2002), where it

held that expenses paid for the *benefit of the employer*, rather than the *benefit of the*

*employee*, were invalid wage setoffs under the federal Fair Labor Standards Act and

thus recoverable by the employees.  These included such expenses as transportation to

the worksite, visa costs, and recruitment fees.  Whereas FedEx argues that payments

for vehicles, insurance, and other business costs benefited the drivers, under the

reasoning of <u>Arriaga</u>, these payments benefited the employer.  Significantly, the federal

regulation that the <u>Arriaga</u> court relied on, 29 C.F.R. § 531.35 (2010)—which

distinguishes between expenses that are for the benefit of the employer and the benefit

of the employee—was cited favorably by the SJC in <u>Coverall II</u>, 460 Mass. at 497 n. 22,

498, thus indicating its adoption under Massachusetts law.[5]

---

[4]      Moreover, it is extremely disingenuous for FedEx to assert that it was the plaintiffs who benefited from being forced to pay for expenses that FedEx required and from which FedEx benefited. <u>See</u> [Doc. 69-13] at § 1.5 (Plaintiffs must mark their vehicles with "such identifying colors, logos, numbers, marks and insignia as may be required…to identify the Equipment as a part of the FedEx Ground system."), § 1.12 (Plaintiffs must "keep his/her appearance consistent with reasonable standards of good order as…promulgated…by FedEx…" and keep their vehicles "in a clean and presentable fashion free of body damage and extraneous markings…."), and § 1.13 (Plaintiffs must "purchase or lease…electronic communications equipment…which complies with specifications promulgated from time to time by FedEx…..").  For the same reason, the "maintenance loan" FedEx deducted from the plaintiffs' wages is also unlawful, because those funds were for maintaining delivery vehicles—a cost that should have been borne by FedEx in the first place.

[5]      As noted in Plaintiffs' brief on damages, at 8 n. 8, <u>Arriaga</u> pertained to minimum wage violations because the FLSA does not have a counterpart to § 148.  However, the SJC's reference to 29 C.F.R. § 531.35 *twice* in <u>Coverall II</u> demonstrates that it adopted this reasoning for non-minimum wage claims, as that case was brought under § 148. 460 Mass. at 497 n. 22, 498.

FedEx asserts that the SJC only found that a prohibited "special contract" existed in Camara because the employer's deduction policy "contain[ed] 'peculiar provisions that are not ordinarily found in contracts related to the same subject matter', and because it applied 'only to certain employees and only in certain circumstances.'" FedEx's Opp. Br. at 9 (quoting Camara, 458 Mass. at 761).  However, FedEx does not endeavor to explain why the deductions here are any less "peculiar" than those in Camara, and FedEx cannot seriously argue that its policy of deducting money from its employees' wages is lawful simply because it applies to all of its employees, rather than just some of them.  Indeed, in Coverall II, the types of payments and deductions that were declared unlawful and recoverable included payments that *all* the cleaning workers made, including insurance payments and "franchise fees".  See Coverall II, 460 Mass. at 496-98.[6]

FedEx similarly struggles to confine the holding in Coverall II to the specific expenses at issue in that case, but ignores that the SJC in Coverall II plainly held that employees simply cannot be required to pay for their job. 460 Mass. at 497-98 (initial fees paid up front by employees out of their pocket, and additional fees taken out of their pay, which were required by the employer in order for the employees to maintain an employment relationship, violate the Wage Act).

Finally, the Court must reject FedEx's argument that the payments that mimic workers' compensation premiums are not recoverable in this case.  As previously

---

[6]     See also Amicus Brief of the Attorney General in Coverall II, attached hereto as Exhibit A, at 13 ("[T]here is no legal distinction between special contracts that impact all similarly situated employees and those that affect only some workers.") (citing DiFiore v. American Airlines, Inc., 454 Mass. 486, 497 (2009) (describing employer's illegal special contract under Tip Statute that applied to all skycaps equally), and Elect. Data Sys., Inc. v. Attorney General, 454 Mass. 63, 70 (2009) (describing company-wide vacation policy, resulting in wage forfeiture, as an illegal special contract)).

discussed, no deduction is lawful unless it constitutes a valid setoff, and FedEx has raised no such defense here.  Moreover, the SJC clearly held in <u>Coverall II</u> that such premiums are recoverable. 460 Mass. at 495-97.  Just as in <u>Coverall II</u>, § 148B—not a common law "right to control" test—is the proper test for employment status for purposes of determining whether an employee can be required to pay for workers compensation-like insurance.[7]  Since this Court has already held that Plaintiffs were employees of FedEx under § 148B, FedEx is liable for all workers' compensation-like premiums that the plaintiffs paid. <u>See</u> <u>Coverall II</u>, 460 Mass. at 495-97.

In sum, FedEx has failed to meet its burden of establishing that it was justified in making the business-related deductions it took from the plaintiffs' pay.

## II.   PLAINTIFFS ARE ENTITLED TO RECOVER ALL BUSINESS EXPENSES FEDEX REQUIRED THEM TO BEAR.

Moreover, under the Wage Act, there is no difference between taking deductions directly from an employee's wages to pay for the employer's business expenses and requiring the employee to directly pay those same expenses out-of-pocket.  <u>See</u> § 148 ("[n]o person shall *by a special contract* with an employee *or by any other means* exempt himself from this section"); <u>Coverall II</u>, 460 Mass. at 497 n. 22 ("An employer's insurance costs, when borne by an employee, reduce wages just as effectively as if the employer had obtained the policy and deducted funds from the wages.").  Again, as mentioned above, in <u>Coverall II</u>, the SJC cited 29 C.F.R § 531.35, which distinguishes between expenses that benefit the employer and expenses that benefit the employee.

---

[7]    <u>See also</u> <u>Amer. Zurich Ins. Co. v. Dept. of Indus. Accidents</u>, 21 Mass.L.Rptr. 224, *3 (Mass.Sup.Ct. 2006) (applying § 148B to find that workers were independent contractors for purposes of workers' compensation); <u>Rainbow Dev., LLC v. Dept. of Indus. Accidents</u>, 2005 WL 3543770, *2-4 (Mass.Sup.Ct. 2005) (applying § 148B to find that workers were employees for purposes of workers' compensation).

In Arriaga, 305 F.3d 1228, the Eleventh Circuit relied on this regulation to hold that

expenses that workers had to pay out of their pocket, for the benefit of the employer,

were recoverable under the FLSA.  And in Coverall II, the SJC held that franchise fees

that the cleaning workers had to pay up front, out of their own pockets, were

recoverable under § 148, just the same as the fees that were deducted from their pay.[8]

As the SJC explained, "'wages' cannot be considered to have been paid...unless

they are paid finally and unconditionally or 'free and clear,' [and not] 'kick[ed]-back'... *to*

*another person* for the employer's benefit." 460 Mass. at 497 n. 22 (emphasis added).

Thus, it also makes no difference whether the business expenses that the drivers paid

for FedEx's benefit were paid, not directly to FedEx, but to "another person."

And, again, FedEx's claim that it paid the Plaintiffs more than it otherwise would

have in order to compensate them for the cost of bearing FedEx's expenses, see

FedEx's Opp. Br. at 17, fails because this argument was put to rest by the SJC

in Somers:

> Were employers who violated the statute permitted a 'safe harbor' that allowed
> them to demonstrate that they would have paid the employee less had they
> known he or she was not an independent contractor, there would be no financial
> incentive to ensure employer compliance, and employees would be left with no
> meaningful protection from misclassification…. The 'windfall' the Legislature
> appeared most concerned with is the 'windfall' that employers enjoy from
> misclassification of employees as independent contractors [including the
> avoidance of] Social Security…contributions…and workers' compensation
> premiums.

---

[8]     The unreported Superior Court case that FedEx relies upon to assert that an employee can be required to bear an employer's expenses, Driscoll v. Worcester Telegram & Gazette Corp., 26 Mass.L.Rptr. 264 (Mass.Sup.Ct. 2009), has been directly contradicted by, and thus reversed by, the more recent holding of the SJC in Coverall II.  Compare Driscoll, 26 Mass.L.Rptr. 264, at *2 ("The Wage Act does not…prohibit an employer and employee from entering into an agreement in which the employee agrees to pay for certain job-related expenses…."), with Coverall II, 460 Mass. at 497 ("An agreement between an employer and an employee that the employee will obtain insurance for the benefit of the employer…violates the Wage Act because it is a 'special contract' that has the effect of exempting the employer from the obligations to pay earned wages in full.").

454 Mass. at 592-93.

Since FedEx admits that the expenses it required the plaintiffs to pay were "business expenses," see FedEx's Opp. Br. at 13, 14 (also using the term "work-related"), and "business expenses" by definition accrue to the benefit of the employer, this practice violates the Wage Act by reducing the Plaintiffs' earned wages "just as effectively" as if FedEx deducted those same business expenses directly from the Plaintiffs' wages. Coverall II, 460 Mass. at 497 n. 22.  Indeed, the plaintiffs' payments each week for fuel, vehicle repairs, and other business expenses are no different from the "franchise fees" imposed by the cleaning company in Coverall II.  See Pls.' Br. at 6-8.  FedEx's argument that "franchise fees" were only invalid because of public policy reasons ignores the express holding by the SJC in that case "that fees such as these constitute 'special contracts,' not usual between employers and employees." Coverall II, 460 Mass. at 497-98.  Moreover, the same reasons for the SJC's finding that "franchise fees" violate public policy exist here: FedEx required the plaintiffs to pay for its own business expenses on a regular basis as a pre-requisite of continued employment.  Just as in Coverall II, "[i]n substance… [these expenses] operate to require [the plaintiffs] to buy their jobs." Id. at 498; see [Doc. 69-13] at § 12.1(c) (permitting FedEx to terminate Plaintiffs at any time for failure to "perform the contractual obligations imposed by this Agreement") and § 1.3 ("Contractor agrees to bear all costs and expenses incidental to operation of the Equipment….").

In a last ditch attempt to avoid liability for these expenses, FedEx points to a statute that addresses the right to reimbursement for the cost of a mandatory pre-employment screening and suggests that this law acts to foreclose employees from

recovering any other type of business expense.  See FedEx's Opp. Br. at 14 (citing

M.G.L. c. 149, § 159B).  However, that statute was enacted in 1949, see 1949 Acts 241,

and since then "the Legislature has highlighted the fundamental importance of the

Wage Act by repeatedly expanding its protections." Melia v. Zenhire, Inc., 462 Mass.

164, 171 n. 6-8 (2012) (chronicling many significant expansions to the Wage Act by the

Legislature between 1919 and 2008).  Thus, a right created in 1949 cannot be read to

limit wage rights that exist in 2013 (and that were recognized by the SJC in 2011

in Coverall II).  Second, in light of the remedial nature of the Wage Act, it would be

illogical to interpret a statute that grants employees a wage right as having the effect of

foreclosing all tangentially related rights.  As the SJC stated in Harborview Residents'

Committee, Inc. v. Quincy Housing Authority:

> We are, of course, aware of the maxim of statutory construction which suggests
> that a statutory expression of one thing is an implied exclusion of other things
> omitted from the statute. [citations omitted].  However, we have also recognized
> that the maxim is not to be followed where to do so would frustrate the general
> beneficial purposes of the legislation.

368 Mass. 425, 432 (1975) (citation omitted); see also Mailhot v. Travelers Ins. Co., 375

Mass. 342, 348 (1978) ("the maxim expressio unius est exclusio alterius…is at most

only a fallible aid to decision").  Thus, a single employment right created in 1949 does

not change the fact that the Wage Act has been continually expanded throughout time

and, as interpreted by the SJC in recent years, includes within its protections the right to

receive all earned wages without being required to pay the employer's business

expenses. Coverall II, 460 Mass. at 497 n. 22.

Similarly, the fact that 455 C.M.R. § 2.04(2) requires employers to reimburse any

uniform dry-cleaning expenses that bring wages below the minimum wage is irrelevant

here.  A court cannot read limits into a statute based on a regulation, especially where

the regulation does not take into account recent SJC authority, see Coverall II, 460

Mass. at 497 n. 22 (broadly interpreting the "special contract" language to prohibit

requiring employees to buy a job or pay the employer's business expenses), and where

the regulation relates to a different chapter in the General Laws.[9]

## III.    CONCLUSION

For the reasons stated herein and in Plaintiffs' Brief Regarding Categories of

Recoverable Damages, [Doc. 106], the Court should hold that the Plaintiffs are entitled

to recover all deductions taken from the plaintiffs' pay (including all insurance payments,

payments for the "business support package," and escrow payments), as well as all

business expenses that the plaintiffs paid in the performance of their jobs as FedEx

drivers (including payments for the purchase or lease of vehicles, fuel costs, tire

replacements, and other vehicle maintenance costs).

In addition, Plaintiffs will also be entitled to trebling of their damages, as well as

attorneys' fees and costs, and pre- and post-judgment interest. See Mass. Gen. L. c.

149 § 150.

---

[9]      Whereas 455 C.M.R. § 2.04(2) interprets the Minimum Fair Wages law, M.G.L. c. 151, Section 148 is found in M.G.L. c. 149.  At any rate, 455 C.M.R. § 2.04(2) actually requires employers to cover the cost of mandatory uniforms and any other expenses.  Id. at § 2.04(2)(b) ("No deposit shall be required by the employer from an employee for a uniform or for any other purpose, except by permission of the [Director of the Department of Labor Standards].").  If an employer cannot require an employee to pay a security deposit for an employer-mandated uniform, then surely an employer cannot require an employee to outright purchase that same uniform.

Dated: September 5, 2013     Respectfully submitted,

CLAYTON SCHWANN, THOMAS LEDUC, MARVIN SANTIAGO, RAMON HELEODORO, JAMES DUGGAN, ERIC VITALE, PHINNIAS MUCHIRAHONDO, TEMISTOCLES SANTOS, LAWRENCE ADAMS, JEFF BAYLIES, and ROBERT SANGSTER,

By their attorneys,


 /s/ Shannon Liss-Riordan
Harold L. Lichten BBO # 549689
Shannon Liss-Riordan BBO # 640716
Sara Smolik, BBO #661341
Lichten & Liss-Riordan, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the attorney of record for each other party via ECF electronic filing on September 5, 2013.


 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.