**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CLAYTON SCHWANN, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**FEDEX GROUND PACKAGE SYSTEM, INC.,**<br><br>**Defendant.** | **Civ. No. 11-11094** |

**MEMORANDUM AND ORDER**

**CASPER, J.** **September 20, 2017**

## I. Introduction

Numerous plaintiffs originally filed this lawsuit against Defendant FedEx Ground Package System, Inc. ("FedEx"), although at this stage in the litigation only one plaintiff, Clayton Schwann ("Schwann"), remains. Count I alleged a violation of the Massachusetts Independent Contractor Law, Mass. Gen. L. c. 149 §148B ("Independent Contractor Law" or "§ 148B"), and Count II alleged a violation of the Massachusetts Wage Law, Mass. Gen. L. c. 149 §§148, 150 ("Wage Law"). D. 1. Schwann also originally brought a claim for unjust enrichment, Count III, but that claim was resolved on an earlier motion for summary judgement, D. 102. Schwann first moved for summary judgment on July 31, 2012 based on liability under the Independent Contractor Law. D. 30. Specifically, Schwann asked the court to find that, as a matter of law, he was an employee of FedEx because FedEx could not meet prongs 2 or 3 of the three-pronged Independent Contractor

Law. Id. at 8-10. After an extensive procedural history, including two summary judgment decisions issued by a different judge in this district, review by the First Circuit where prong 2 of the Independent Contractor Law was held to be preempted by federal law and the granting of a motion for reassignment, the case landed before this Court. D. 168. Schwann's supplemental brief suggested that prongs 1 and 3 of the Independent Contractor Law were now ripe for review. See D. 174. As conceded by Schwann's counsel at the motion hearing and as discussed before fully below, however, only prong 3 of the Independent Contractor Law is ripe. For the reasons stated below, the Court DENIES Schwann's motion for summary judgement as to prong 3. D. 68.

## II. Standard of Review

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor, Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001), but only "to the extent supportable by the record," Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

As to issues on which the nonmoving party has the burden of proof at trial, the moving party "need do no more than aver 'an absence of evidence to support the nonmoving party's case.'" In re Varrasso, 37 F.3d 760, 763 n.1 (1st Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009); Ingram v. Brink's, Inc., 414 F.3d 222, 228–29 (1st Cir. 2005). "Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion.'" Meuser, 564 F.3d at 515 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)); see Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011)

(explaining that "[a] genuine issue of material fact can be created only by materials of evidentiary quality"); Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (stating that summary judgment cannot be defeated by relying on "conclusory allegations, improbable inferences, and unsupported speculation"). If the nonmoving party cannot "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it . . . the motion must be granted." Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996).

## III. Factual Background

The facts of this case have been outlined extensively in previous court orders. See, e.g., D. 65. As such, only the undisputed facts relevant to this motion are recounted here. FedEx is a federally registered motor carrier licensed by the United States Department of Transportation engaged in the business of providing package delivery services to its customers throughout the country, including in the Commonwealth of Massachusetts. D. 69 ¶ 1; D. 72 ¶ 1. Schwann worked for FedEx as a package pick-up and delivery driver in Massachusetts. D. 69 ¶¶ 2-11. As a condition for working for FedEx, Schwann signed an "Operating Agreement" ("OA"), D. 69-13, which laid out various stipulations that governed the working relationship between FedEx and Schwann and classified Schwann as an independent contractor. See D. 69 ¶ 12; D. 72 ¶ 4. Schwann was required to use his own vehicle for pick-up, transportation and delivery services. D. 72 ¶ 2. Under the OA, FedEx retained the ability to dictate the "identifying colors, logos, numbers, marks and insignia" of the vehicles. D. 69-13 § 1.5. The OA further stipulated that while Schwann could "use the Equipment for other commercial or personal purposes," he was to do so "with the understanding that all such identifying numbers, marks, logos and insignia will be removed or masked (by paper or plastic overlay) when the Equipment is so used." Id. Moreover, pursuant to

the OA, Schwann was forbidden from using his vehicle for any other purposes other than the carriage of FedEx packages while acting in the service of FedEx. Id. § 1.4.

The OA provided Schwann the exclusive right to perform his delivery services in one or more Primary Service Areas ("PSA"), or routes, and recognized "a proprietary interest by Contractor in the customer accounts in his/her Primary Service Area . . . ." Id. § 5.3. Nonetheless, the OA granted FedEx the authority to "reconfigure" a driver's service area upon five days' written notice "with the result that customers previously served by the Contractor are reassigned." Id. In structuring the means by which he delivered packages within his PSA, Schwann could "with the consent of FedEx Ground and consistent with the capacity of the terminal serviced by [each Plaintiff], own and operate more than one vehicle, with any such additional vehicles to be driven by qualified operators employed by [Plaintiffs] . . . ." Id. § 2.1. Additionally, the OA granted Schwann the ability to "employ or provide person(s) to assist [him] in performing the obligations specified by this Agreement." Id. § 2.2. In other words, pursuant to the OA, Schwann could—at least conceivably—deliver his assigned packages himself, hire his own workers to make the deliveries or structure his delivery system somewhere in between the two (i.e. delivering some packages while hiring others to deliver the rest).

## IV. Procedural History

Schwann was originally a member of a lawsuit filed against FedEx in 2005 based on the same claims present in this case. See D. 65 at 1-2. That case, Sheehan v. FedEx Ground Package Sys., Inc., No. 05-10936 (D. Mass. filed May 6, 2005), was transferred by the Multidistrict Litigation ("MDL") Panel to the Northern District of Indiana where it was consolidated for pretrial purposes with a number of similar cases brought against FedEx. D. 65 at 2. The transferee judge in the Northern District of Indiana ultimately denied the Sheehan plaintiffs' motion for class

certification and the case was remanded back to this district. Order Lifting Stay of Cond. Remand Order, No. 05-00527 (N.D. Ind. Sept. 24, 2010) (Doc No. 2213). Subsequently, the Sheehan case was settled. D. 65 at 2. The instant case was then brought in 2011 on behalf of the drivers who did not settle for a variety of reasons ("Original Plaintiffs"). D. 1. The remaining Original Plaintiffs filed their first motion for summary judgment on July 31, 2012. D. 30. This motion asked the court (Stearns, J.) to find that they were employees, rather than independent contractors, under prongs 2 and 3 of the Independent Contractor Law. Id. Prong 1 was not briefed. Id. Judge Stearns dismissed this motion without prejudice pending the resolution of a class certification issue. See D. entry dated November 2, 2012.

After Judge Stearns denied the motion to certify class in April 2013, D. 65, the parties both renewed their motions for summary judgment. D. 68; D. 70. Again, Original Plaintiffs' motion only asked the court to determine whether they were employees under prongs 2 and 3 of the Independent Contractor Law. D. 68. FedEx also filed a motion for summary judgment, arguing, *inter alia*, that Original Plaintiffs' claims were preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). D. 70. On July 3, 2013, the Court denied FedEx's motion on Counts I and II, finding no FAAAA preemption, and granted it as to Count III (unjust enrichment). D. 102. Finding that Original Plaintiffs did not work outside FedEx's "usual course of business" under prong 2 of § 148B, the Court granted summary judgment in their favor as to Count I. Id. at 16. Because the three prongs of the Independent Contractor Law are conjunctive—meaning a worker is deemed an employee if any one prong is not met—the Court did not reach the merits of prong 3. Id. at 17.

After subsequent litigation on the damages recoverable under the Massachusetts Wage Act (Count II), Judge Stearns certified questions on damages to the Supreme Judicial Court of

Massachusetts. D. 125. Prior to the scheduled oral argument before the Supreme Judicial Court, however, the First Circuit issued its decision in Massachusetts Delivery Ass'n ("MDA") v. Coakley, 769 F.3d 11 (1st Cir. 2014), which cast doubt upon Judge Stearns' earlier ruling that prong 2 of § 148B was not preempted by the FAAAA. Consequently, he requested supplemental briefing "to address both the impact of the MDA decision, as well as Original Plaintiffs' contention that they are entitled to summary judgment on the third prong of 148B." D. 137. For the first time, over two years after their initial summary judgment filing, Original Plaintiffs argued in their supplemental brief that the court could also grant summary judgment as to prong 1. D. 138 at 10.

In light of MDA, Judge Stearns ruled that prong 2 was preempted by the FAAAA. D. 149. He also decided that prong 2 was not severable from prongs 1 and 3. Id. at 4-5. As such, he did not address the merits of Original Plaintiffs' argument concerning either of the other prongs and granted summary judgment in favor of FedEx on all counts. Id. Original Plaintiffs appealed the ruling to the First Circuit, D. 155, which affirmed that prong 2 of § 148B was preempted by the FAAAA, but reversed as to the holding that prong 2 was not severable from prongs 1 and 3 and remanded the case back to the district court as to those two prongs. D. 157. Original Plaintiffs then moved to have the case reassigned, D. 160, which Judge Stearns granted. D. 167. The case was then randomly reassigned to this session. D. 168.

Upon reassignment, a status conference was held with both parties. D. 172. The Court instructed parties to file briefing as to whether prong 1 was even ripe for summary judgment. Id. The Court subsequently heard the parties on the pending motion—namely, the motion for summary judgment on prong 3 and the ripeness of a motion for summary judgment as to prong 1—and took these matters under advisement. D. 176. Approximately six weeks after the motion hearing, the parties filed a stipulation of dismissal and all plaintiffs with the exception of Schwann

were dismissed from this action. D. 179. The Court also stayed its decision on the pending motion numerous times as FedEx and Schwann engaged in settlement negotiations. D. 180; D. 182; D. 184; D. 186. FedEx's counsel has now requested that the Court issue its order on the summary judgment motion, D. 187 at n. 1, which the Court now does.

**V. Discussion**

In Massachusetts, Mass. Gen. L. c. 149 §148B governs whether an individual providing services is to be classified as an independent contractor or as an employee. Under this law, employees are afforded the protection of wage and overtime laws, while independent contractors are not provided the same. See Mass. Gen. L. c. 149; Mass. Gen. L. c. 151. Under the statute, a worker is presumed to be an employee unless the employer establishes that:

> (1) the individual is free from control and direction in connection with the performance of the service both under his contract for the performance of service and in fact; and (2) the service is performed outside the usual course of the business of the employer; and, (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. L. c. 149 §148B. This is a conjunctive test and the failure to meet any one of the three elements has the effect of precluding independent contractor status. Athol Daily News v. Bd. of Review of the Div. of Unemployment & Training, 439 Mass. 171, 175 (2003) (construing Mass. Gen. L. c. 151A, § 2, a virtually identical statute to Mass. Gen. L. c. 149 §148B). The Court notes that it may not consider prong 2 in light of the First Circuit's earlier decision that this prong is preempted by the FAAAA. Schwann v. FedEx Ground Package Sys., Inc., 813 F.3d 419, 441 (1st Cir. 2016).

In enacting §148B the legislature intended "to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors." Somers v. Converged Access, Inc., 454 Mass. 582, 592 (2009). The Supreme Judicial Court has

recognized that, in passing Mass. Gen. L. c. 149 §148B, "the Legislature appeared most concerned with [] the 'windfall' that employers enjoy from the misclassification of employees as independent contractors: the avoidance of holiday, vacation, and overtime pay; Social Security and Medicare contributions; unemployment insurance contributions; workers' compensation premiums; and income tax withholding obligations." Id. Indeed, "[m]isclassification not only hurts the individual employee; it also imposes significant financial burdens on the Federal government and the Commonwealth in lost tax and insurance revenues." Id. In addition, "it gives an employer who misclassifies employees as independent contractors an unfair competitive advantage over employers who correctly classify their employees and bear the concomitant financial burden." Id. The Supreme Judicial Court has also instructed that "[g]enerally, remedial statutes such as the independent contractor statute are entitled to liberal construction." Depianti v. Jan-Pro Franchising Intern., Inc., 465 Mass. 607, 620 (2013); see Terra Nova Ins. Co. v. Fray–Witzer, 449 Mass. 406, 420, 869 N.E.2d 565 (2007) (stating that a statute is remedial in nature where it is "intended to address misdeeds suffered by individuals, rather than one that punishes public wrongs").

**A. Prong 1 of § 148B is not Ripe for Summary Judgment**

Schwann did not address the merits of §148B's prong 1 in his memoranda connected with both the original summary judgment motion filed on July 31, 2012, D. 30, and the renewed motion for summary judgment filed on April 30, 2013, D. 68. Rather, in both memoranda, Schwann disavowed the need to move for summary judgment as to that prong. See D. 30 at 5-6 (noting that "consideration of the first prong is unnecessary"); D. 68 at 5-6 (noting the same). Schwann conceded that "there may be disputed facts with respect to FedEx's direction and control of [Schwann's] work, but such disputes, relevant to prong one only, do not prevent the Court from finding, upon a motion for summary judgment, that Schwann was FedEx's employee under the

Independent Contractor Law." D. 30 at 5 n.6; D. 68 at 5 n.6. That is, there is no pending motion for summary judgment on prong 1. At oral argument, Schwann's counsel indicated that he is not pressing a motion for summary judgment on prong 1 since no such motion is pending. D. 177 at 4. Accordingly, the Court focuses only on Schwann's motion for summary judgment on prong 3.

**B. Summary Judgment is not Warranted under Prong 3**

The third prong of §148B requires the Court to determine whether an individual performing a service "is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

The Supreme Judicial Court analyzed prong 3 in Athol Daily News, 439 Mass. at 172, 181, where it was tasked with determining whether newspaper carriers for the Athol Daily News were employees under §148B and, therefore, eligible for unemployment compensation benefits under G.L. c. 151A. Id. The court articulated that the analysis hinged on whether:

> the service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the work to depend on a single employer for the continuation of the services.

Id. at 181. That is, prong 3 "seeks to discern whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise." Id. (quoting Bos. Bicycle Couriers, Inc. v. Deputy Dir. of Div. of Emp't & Training, 56 Mass. App. Ct. 473, 480 (2002)). In laying out this test, the Court explicitly rejected an alternative test that had previously been used by the Massachusetts Board of Review of the Division of Employment and Training (the "Board"). The Board had found that the Athol carriers were not engaged in an independent enterprise—and were, therefore, employees—based on its finding that the carriers did not have a proprietary interest in their delivery services. Id. In other words, the Board found prong

3 to be inapplicable to the extent that the carriers' enterprise would not necessarily survive the termination of the relationship with Athol Daily News. The Supreme Judicial Court concluded that this standard "far too stringent." Id. at 180. Indeed, "[i]ts literal application would deny independent contractor status to almost any worker whose trade, occupation, profession or business, although established and operated independently, remains economically viable solely because of its contractual relationships with other entities, and would render superfluous any examination of [the other two prongs]." Id.

Applying its newly articulated test, the Athol court instead ruled that the carriers fulfilled the criteria in prong 3 and were thus ineligible for unemployment compensation benefits. Id. at 181-82. To support the reversal of the Board, the court pointed to the fact that the carriers owned their own vehicles, not company vehicles; they were not paid an hourly wage, but instead purchased the newspapers directly from the publisher and could resell them to subscribers at a price of their choosing; they could contract with their subscribers and other companies to deliver additional items—such as advertising flyers—while they delivered the newspapers and they could contract with their subscribers to perform other tasks—such as picking up subscribers' groceries—while performing the deliveries; and additional fees could be charged for these additional services. Id. at 182. The court stated that "[b]y its very nature, the business of delivering newspapers is not limited to a single employer, and nothing with respect to the carriers' job performance in this case is unique to one certain newspaper publisher." Id. at 181-82. Given that "[t]he breadth of each carrier's delivery service [was] a function, not only of the original subscriber list given to the carrier by the News, but of the individual initiative of the carrier," their classification as an independent contractor under prong 3 was appropriate. Id. at 182.

The Supreme Judicial Court, however, further addressed prong 3 test a few years later in Coverall North America, Inc. v. Commissioner of the Division of Unemployment Assistance, 447 Mass. 852 (2006). There, the court affirmed a lower court's holding that a worker for Coverall, a company selling franchises specializing in commercial janitorial cleaning businesses, was an employee under prong 3. Id. at 857. In doing so, the Court rejected Coverall's argument that the crux of the prong 3 inquiry focused on what the worker was capable of doing rather than on what the worker actually did. Id. Coverall argued that although one of its workers did not take advantage of a contract provision that would have allowed her to be an entrepreneur and expand her business by hiring new employees, she still should have been classified as an independent contractor because she was theoretically capable of expanding her business. Id. In other words, Coverall read the Athol case as establishing a "capability test." The Supreme Judicial Court expressly disavowed this interpretation of Athol, stating in unequivocal terms, "we disagree." Id. Rather, the Court held that while a worker's capability of performing the service to anyone wishing to avail themselves of that services was one factor to be considered, other factors—such as whether "the nature of the business compels the worker to depend on a single employer for the continuation of the services"— needed to be considered, as well. Id. (quoting Athol, 439 Mass. at 181). Thus, while the worker in Coverall was capable of hiring her own employees and could solicit business directly, she was, according to the court, very much reliant upon Coverall for the maintenance of her business. Id. at 854, 858. For example, Coverall negotiated payment issues directly with clients and billed them directly. Id. at 854. The worker was not involved in this process whatsoever. Id. The worker was supervised by a Coverall field consultant while she cleaned the client's premises. Id. Coverall also assigned the worker to work with specific clients for a fixed number of hours on set days. Id. When she complained that the assigned tasks could not be completed in the number

of hours allocated, she was told to complete the tasks nonetheless, which caused her to work in excess of the number of hours for which she had been scheduled. Id. In effect, the worker "only cleaned at the locations Coverall provided and was provided with a plan of action and directed to follow it by Coverall supervisors." Id. at 858. This, the Supreme Judicial Court held, supported a finding that the worker was, in fact, an employee rather than an independent contractor.

The third and most recent Supreme Judicial Court decision to address prong 3 is Sebago v. Boston Cab Dispatch, Inc., 471 Mass. 321 (2015). FedEx appears to believe that the analytical framework with which courts have addressed prong 3 under §148B has been changed by Sebago. Indeed, according to FedEx, "all of the Massachusetts case law that [Schwann] cite[s] predates the SJC's resounding articulation in Sebago of the touchstone of the Prong 3 inquiry: entrepreneurial opportunity," and, FedEx continues, whether entrepreneurial opportunity is met under Sebago turns on whether Schwann is "capable of performing services for anyone, regardless of whether [he] do[es] so." D. 175 at 11. Sebago, however, does not mention the words "entrepreneurial opportunity" even once in discussing prong 3 and there is no suggestion in Sebago that a worker's potential entrepreneurial opportunity is dispositive under prong 3 of the Independent Contractor Law. Furthermore, as mentioned above, the Supreme Judicial Court has disclaimed any reading of prong 3 that turns on a "capability test" that focuses solely on what an individual is capable of doing as opposed to what an individual actually did, see Coverall, 447 Mass. at 858, and Sebago does not purport to alter this analysis, see Sebago, 471 Mass. at 336 (quoting Athol Daily News, 439 Mass. at 181) (stating that "[t]he critical inquiry under [prong 3] is whether 'the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services'").

FedEx's focus on entrepreneurial opportunity, coupled with its reliance on a recent D.C. Circuit case, may mean that FedEx views the analysis required under the Massachusetts Independent Contractor Law as directly mirroring its federal counterpart, the National Labor Relations Act. See D. 78 at 22; D. 187-1. That is not the case. In FedEx Home Delivery v. National Labor Relations Board, 563 F.3d 492, 497 (D.C. Cir. 2009), the D.C. Circuit interpreted the test required under the National Labor Relations Act as one that revolved around potential entrepreneurial opportunity. See id. In embracing this analysis, the court "shift[ed the] emphasis away from the unwieldy control inquiry . . ." which resembles prong 1 of the Massachusetts test, and instead honed in on "whether the putative independent contractors have significant entrepreneurial opportunity for gain or loss." Id. (citation and internal quotation marks omitted). The line that the D.C. Circuit drew was sharp: even "one instance" of a worker engaging in an independent entrepreneurial opportunity could be sufficient to classify the worker as an independent contractor. Id. at 502; see id. at 504 (Garland, J., dissenting) (noting that "in [the majority's] view, this factor can be satisfied by showing a few examples, or even a single instance, of a driver seizing an entrepreneurial opportunity"). But courts in Massachusetts have never gone so far. Indeed, courts in this Commonwealth have found workers to be employees even when those workers have hired their own employees, so long as the undisputed facts indicate that the worker was "wearing the hat" of the employer in hiring those extra employees. See, e.g., Bos. Bicycle Couriers, Inc., 56 Mass. App. Ct. at 480; Oliveria v. Advanced Delivery Sys., Inc., No. 09131, 2010 WL 4071360, at *7 (Mass. Super. July 16, 2010).

Here, the Court concludes that summary judgment on prong 3 is not warranted on this record. See, e.g., Vargas v. Spirit Delivery & Distrib. Servs., Inc., 13-12635, at *10 (D. Mass. March 24, 2017) (denying summary as to prong 3). Under the OA, Schwann is capable of hiring

his own employees to assist with delivering packages within his PSA. D. 69-13 § 2.2. Schwann has admitted as much, recognizing that at least some workers hired additional drivers to pick up and deliver packages in Massachusetts. See D. 89 ¶ 9 (not disputing FedEx's assertion that "[d]uring the time period relevant to this lawsuit, one contractor operated out of a terminal in Albany, New York and sent 13 drivers per day to pick up and deliver packages in Massachusetts); D. 73 ¶ 4. Schwann still contends that he was generally not capable of maintaining separate businesses in an individual capacity. That is, if Schwann did not hire additional drivers, he would otherwise have been compelled to rely upon FedEx to make ends meet. Schwann argues that it was legally impossible for him to deliver for both FedEx and some other carrier because 49 C.F.R. § 395.3(b)(1) limited him to working a maximum of 60 hours on duty (for FedEx or otherwise) in a seven-day period. D. 68 at 18. He also points out that he could not control the number of packages FedEx assigned to him on any given day, which regularly required him to work all 60 hours each week. Id. FedEx, however, has presented numerous declarations from current and former FedEx employees stating that it was common practice for drivers to swap packages among themselves to increase or decrease their package volume. See D. 81 ¶ 21; D. 82 ¶ 19; D. 84 ¶ 19; D. 85 ¶ 20. This, FedEx continues, gave drivers the ability to increase their daily settlement and/or reduce their costs. D. 79 ¶ 16. According to FedEx, such swapping was usually allowed without the involvement of the terminal management. Id. If FedEx assertions are credited, then there is at least a question of fact as to whether Schwann was an independent contractor rather than an employee.

Additionally, like the worker in Coverall, Schwann did not have control over the prices clients were billed for the services he provided, D. 69-13 § 4, and, unlike in Athol, Schwann was contractually barred from using FedEx vehicles to deliver any other items or conduct any other

business while servicing routes for FedEx. Id. at § 1.4. Still, Schwann could use his vehicle for non-FedEx activities provided that he did not display the FedEx logo while doing so. Id. at § 1.5. Schwann argues that covering up the logo was difficult and could not be re-applied if removed. D. 69 ¶ 29. FedEx counters with numerous declarations of FedEx workers who were provided with special masking material that is easy to place over the logo and remove as needed. See D. 81 ¶ 28; D. 84 ¶ 24; D. 87 ¶ 25. Additionally, some former workers stated that it was also possible to purchase large white magnets to cover up the FedEx logos if they wished. D. 82 ¶ 23; D. 84 ¶ 24. Accordingly, there is conflicting evidence as to how feasible it was for Schwann to cover up FedEx labels such that he could potentially engage in non-FedEx related activities.

At least one Massachusetts court has viewed a company's provision of insurance as a factor that could help shed light on whether workers are employees or independent contractors. In Boston Bicycle Couriers, 56 Mass. App. Ct. at 482, the court explained that the fact that the employer voluntarily purchased workers' compensation insurance for its drivers, meaning "[t]he risk of loss for nonpayment of the delivery charges fell squarely on [the employer]," was evidence that the workers were employees rather than independent contractors. Here, while Schwann purchased his own insurance plan, he argues that FedEx required him to do so. See D. 68 at 19. He points the Court to the OA to suggest that the plan he had only insured FedEx packages—not all packages or items present in the vehicle—for loss or damages. D. 69 ¶ 28. Thus, Schwann suggests he did not meaningfully differ from the employees in Boston Bicycle Couriers and his required insurance scheme is indicative of an employee-employer relationship. FedEx responds by pointing to numerous declarations and deposition transcripts that suggest FedEx did not require its drivers to choose any specific insurance plan. See D. 80-3 at 9-10; D. 81 ¶ 30; D. 84 ¶ 28; D. 85 ¶ 28; D. 87 ¶ 27. Rather, according to these documents, Schwann could choose any plan he wished as long as

it met the bare requirements set forth by Fed Ex. Id. Indeed, one senior manager at FedEx stated that there were workers at the Boston terminal who chose to purchase insurance through companies other than the vendor recommended by FedEx. D. 82 ¶ 26. There is also nothing in the OA that allows the Court to conclude that FedEx drivers were prevented from purchasing insurance above and beyond what they contracted to provide. Without more, the Court cannot make a determination as a matter of law as to Schwann's employment status based on the insurance provisions he contracted to purchase.

Schwann also suggests that he did not maintain an independent trade or business as required under prong 3 because FedEx retained the right to audit and monitor his work performance, such as riding along in his vehicle and performing audits where FedEx personnel would follow him as he performed his work. D. 69 ¶ 21. While the ability to directly supervise a worker may suggest an employer-employee relationship under prong 3, especially when coupled with the employer's ability to terminate the worker at will, see Bos. Bicycle Couriers, 56 Mass. App. Ct. at 483, FedEx counters with declarations that the audits performed via these "ride alongs" were a mere opportunity for managers to field questions, discuss issues that drivers had about servicing their PSAs and encourage safe driving habits. See D. 81 ¶ 38; D. 82 ¶ 35; D. 84 ¶ 36; D. 85 ¶ 36; D. 87 ¶ 35. Any comments provided by FedEx management to Schwann and other drivers regarding driving habits were, according to the declarations provided to the Court, only suggestions, and drivers were under no obligation to follow them. See D. 81 ¶ 38; D. 82 ¶ 35; D. 84 ¶ 36; D. 85 ¶ 36; D. 87 ¶ 35. Moreover, the termination provisions in the OA do not appear to anticipate FedEx's ability to terminate drivers at will, at least when read in the light most favorable to FedEx. D. 69-13 § 12. At minimum, there is a factual dispute as to whether these "ride alongs" were significant enough to undermine the independence of Schwann and other FedEx drivers, and

there have been no facts presented that suggest the "ride alongs" could or did result in the termination of drivers in Massachusetts.

Lastly, the Court notes that while Schwann cites several cases where a Massachusetts state court upheld a state administrative body's finding that workers were employees, see, e.g., Coverall, 447 Mass. 852; Subcontracting Concepts, Inc. v. Comm'r of Div. of Unemployment Assistance, 86 Mass. App. Ct. 644, 649 (2014), there are differing standards of review that exist for challenges to administrative decisions. Administrative decisions are reviewed in Massachusetts for whether they are supported by "substantial evidence," Mass. Gen. L. c. 30A, § 14(7)(e), which is defined as such evidence that "a reasonable mind might accept as adequate to support a conclusion," Mass. Gen. L. c. 30A, § 1(6). This deferential standard is considerably less stringent than the summary judgment standard that requires this Court to draw all inferences in favor of FedEx and make its ruling as a matter of law on a record of undisputed material facts.

With these considerations in mind, and in drawing all inferences in FedEx's favor, there are factual disputes regarding prong 3 which prevent the Court from granting summary judgment as to that prong. At issue at trial will be whether Schwann was properly classified as an independent contractor under Mass. Gen. L. c. 149 §148B. At that juncture, there must be a showing that the test under both prongs 1 and 3 of the Independent Contractor Law is satisfied for FedEx to prevail. If such showing is not made on either prong, Schwann will be entitled to a verdict in his favor and, if shown, damages because of his misclassification as an independent contractor.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Schwann's motion for summary judgment as to prong 3, D. 68.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge